**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MARCIA WILLIAMS,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>METROPCS WIRELESS, INC.,<br><br>　　　　　　Defendant. | No. 09-CV-22890-Altonaga-Brown |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

## I.   INTRODUCTION

Plaintiff Marcia Williams ("Plaintiff"), a subscriber to wireless communications services provided by Defendant MetroPCS Wireless, Inc. ("MetroPCS"), claims that MetroPCS has engaged in false and misleading advertising in violation of federal law and various state consumer protection laws by characterizing its wireless service as "unlimited" and "nationwide." *See* Pl.'s Compl.  Although MetroPCS believes Plaintiff's claims have no merit, the parties previously agreed that an arbitrator, not a court, must make that determination.  *See* MetroPCS Terms and Conditions of Service (Exhibits A, B, C, F to Declaration of Jamie Chatterton (hereinafter "Chatterton Declaration") attached hereto as Exhibit 1).  Rather than honor that agreement, however, Plaintiff's counsel filed this putative nationwide class action and then refused MetroPCS' request that she submit her claims to individual arbitration instead.  Accordingly, MetroPCS respectfully requests that the Court compel her to do so.

MetroPCS anticipates that Plaintiff will argue that her arbitration agreement is unconscionable because it contains a class action waiver.  Plaintiff would be wrong.  There is no

quantum of procedural unconscionability here, as Plaintiff is free to obtain wireless service from any number of other wireless providers – or no service provider at all – and was also free to cancel her MetroPCS service – without incurring any costs – within thirty days of signing up. Nor is there any measure of substantive unconscionability here, as courts in the Eleventh Circuit and Florida have both found that arbitration agreements with class action waivers are fully enforceable when, as here, a prevailing plaintiff can recover her attorneys' fees in an arbitration. And assuming Florida courts were to adopt a contrary rule – which they have not – it would be preempted by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  *See infra.*

## II.   BACKGROUND

### A.   Plaintiff Accepted and Agreed to MetroPCS' Terms and Conditions of Service

Plaintiff is a resident of Seminole County, Florida who purchased an Unlimited $45 per month wireless service plan from MetroPCS.  *See* Pl.'s Compl. ¶ 10.[1]  By purchasing and using that service, she accepted and agreed to the MetroPCS Terms and Conditions of Service.  *See* Chatterton Decl. ¶¶ 21, 32 (attached hereto as Exhibit 1).

MetroPCS' standard business practice is to give customers a Start of Service Request Form, attached to which are the Terms and Conditions of Service, upon signing up for service. *See id.* ¶¶ 13-17 & Exs. A, B, C.  Those Terms and Conditions of Service state that use of the service constitutes acceptance of and agreement to the terms and conditions:

> **IF YOU ARE A NEW CUSTOMER, WHEN YOU INITIATE
> SERVICE BY ATTEMPTING TO PLACE A CALL ON
> METROPCS'S WIRELESS SYSTEM OR TO USE ANY**

---

[1]     Because Plaintiff is a Florida resident, her agreement with MetroPCS is governed by the laws of that state.  *See* Chatterton Decl. at Exs. A, B, C, F (stating that the Terms and Conditions of Service "shall be interpreted under the laws of the State in which you are a subscriber.").

> **OTHER SERVICE, YOU AGREE TO THIS AGREEMENT AND ALL APPLICABLE LAWS. BY USING METROPCS'S WIRELESS SYSTEM OR ANY OTHER SERVICE, YOU ARE INDICATING YOUR INTENT TO BE BOUND BY THE TERMS AND CONDITIONS OF SERVICE OF THIS AGREEMENT.**

*Id.* ¶ 32 & Ex. F (emphasis and typography in original); *see also id.* at Exs. A, B, C.  Because MetroPCS wireless service is prepaid, customers must affirmatively choose each month to continue their service by paying for that service in advance.

MetroPCS' standard business practice is to also include a Welcome Guide in the packaging of its cellular handsets.  *See id.* ¶¶ 18-20.  The MetroPCS Welcome Guide similarly states that use of the service constitutes acceptance of and agreement to the Terms and Conditions of Service, and refers the customer to the company's website, www.metropcs.com, *id.* ¶¶ 21, 24 & Exs. D, E, where the most current version of Metro PCS' Terms and Conditions of Service can be found:

> **Start of Service Form/Rate Plan/Coverage Brochure.**  When you initiate Service with MetroPCS, you should receive your Start of Service form, this Agreement, and a brochure detailing the coverage available in your service area. These materials are part of your Agreement with MetroPCS. . . .  If you do not receive the Start of Service Form or the other documents, you may obtain a copy from us, our dealers, or our web site at www.metropcs.com.

*Id.* at Ex. F (emphasis in original).    In addition, MetroPCS customers can return their wireless phones for a full refund within the first thirty days.  *See id.* ¶ 7.

## B.    MetroPCS' Terms and Conditions of Service Require Individual Arbitration

At all relevant times, MetroPCS' Terms and Conditions of Service has contained an arbitration provision, substantively the same as that found at Exhibits A, B, C and F to the Chatterton Declaration, that obligates both MetroPCS and its customers to resolve their disputes through binding arbitration:

> **Arbitration; Dispute Resolution. Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or Services provided to you under this Agreement, including (without limitation) statutory, tort and contract Claims and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved, upon the election by you or us, by binding arbitration. . . .**

Chatterton Decl. ¶ 33 & Ex. F (emphasis in original); *see also id.* at Exs. A, B, C. That agreement also clearly and unambiguously requires that MetroPCS and its customers resolve their disputes on an individual basis rather than by pursuing a putative class action:

> **No class actions, other representative actions, or joinder or consolidation of any Claim with a Claim of any other person or entity shall be allowable in arbitration, without the written consent of both you and us.**
>
> **. . . .**
>
> **IF ARBITRATION IS CHOSEN BY YOU OR US WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IF ARBITRATION IS CHOSEN, YOU AND WE WILL NOT HAVE RIGHTS THAT ARE PROVIDED IN COURT INCLUDING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT SUCH AS CLASS ACTION LITIGATIONS.**

*Id.* at Ex. F (emphasis and typography in original); *see also id.* at Exs. A, B, C.

The arbitration provision also contains a number of consumer-friendly provisions that make the arbitral process less costly and more flexible. For example, it affords subscribers a convenient arbitral forum;[2] allows them to choose their preferred arbitrator;[3] does not require

---

[2]    *See id.* at Ex. F ("Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address. . . ."); *see also id.* at Exs. A, B, C.

[3]    *See* Ex. F ("The party filing an arbitration must choose one of the following three arbitration administrators: National Arbitration Forum; American Arbitration Association; or

them to keep arbitral awards confidential;[4] does not foreclose whatever ability they may have in arbitration to take discovery or to take an appeal from an arbitral award;[5] does not waive their right to recover statutory damages if the statute they are suing under prohibits such a waiver;[6] does not prohibit their right to recover an award of attorneys' fees if such an award is justified by the law under which they seek relief;[7] and incorporates the arbitral rules of the arbitrator they select,[8] which provide for filing fees comparable to those they would have to pay in court,[9] and for the waiver of those fees in the case of financial hardship or agreement of the parties.[10]

---

JAMS."); *see also id.* at Exs. A, B, C.  Although the National Arbitration Forum is no longer participating in consumer arbitration cases, *see* https://secure.arb-forum.com/codefiling/contacts.aspx, consumers may still choose between either the American Arbitration Association or JAMS.

[4]     *See generally* Chatterton Decl. at Exs. A, B, C, F.

[5]     *See generally id.* at Ex. F ("OTHER RIGHTS INCLUDING THE RIGHT TO DISCOVERY AND THE RIGHT TO APPEAL ARE ALSO LIMITED OR ELIMINATED BY ARBITRATION.") (typography in original); *see also id.* at Exs. A, B, C.

[6]     *See generally id.* at Exs. A, B, C, F.

[7]     *See generally id.* at Exs. A, B, C, F.

[8]     *See generally id.* at Ex. F ("This arbitration agreement shall be . . . conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed, unless this arbitration provision is inconsistent with those procedures and rules, in which case this Agreement will prevail."); *see also id.* at Exs. A, B, C.

[9]     *See, e.g.,* AAA Supplementary Procedures For The Resolution Of Consumer-Related Disputes, Rule C-8 ("If the consumer's claim or counterclaim does not exceed $10,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $125.  This deposit is used to pay the arbitrator. It is refunded if not used. . . .  The business must pay for all arbitrator compensation deposits beyond those that are the responsibility of the consumer."), available at http://www.adr.org/sp.asp?id=22014; JAMS Arbitration Demand, available at http://www.jamsadr.com/files/Uploads/Documents/JAMS_Arbitration_Demand.pdf (setting case management fee at $400).  By way of comparison, the filing fee in the Circuit Court of Seminole County, Florida as of June 2009 ranges from $55 (for all claims below $100) to as much as $300 (for all claims above $2,500).  *See* Schedule of Civil Filing Fees dated June 1, 2009, available at http://www.seminoleclerk.org/FeesAndForms/fees/civil-filing-fees.pdf.

[10]     *See, e.g.,* AAA Commercial Arbitration Rules, Rule R-49 ("The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."); JAMS Comprehensive Arbitration Rules, Rule 31 ("Each Party shall pay its pro-rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses."), available at http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule%2031.

**C.**     **Plaintiff Disregarded Her Arbitration Agreement by Filing Suit in This Court**

Despite agreeing to arbitrate all of her disputes with MetroPCS, Plaintiff filed a putative class action Complaint in this Court.  *See* Pl.'s Compl.  Her Complaint alleges that MetroPCS engaged in false and misleading consumer advertising in violation of federal law and various state consumer protection laws, including the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), when it characterized its wireless service as "unlimited" and "nationwide."  *Id.* ¶¶ 1-6, 46-98.  She seeks damages, equitable and declaratory relief, and attorneys' fees and costs. *Id.* ¶ 99.  In light of the parties' written arbitration agreement and class action waiver, MetroPCS requested that Plaintiff dismiss this action and submit her claims to individual arbitration. Plaintiff refused, necessitating this Motion.

## III.   DISCUSSION

**A.**     **Plaintiff's Arbitration Agreement Is Within the Scope of the FAA**

Congress has expressed a strong public policy favoring arbitration pursuant to which courts are not only encouraged, but required, to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985).  Congress enacted the FAA in order to "reverse the longstanding judicial hostility to arbitration agreements" and to place such agreements on "the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").  As the Supreme Court has explained, "questions of arbitrability must be

addressed with a healthy regard for [this] federal policy favoring arbitrations." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Arbitration agreements must meet only two conditions for the FAA to apply: (1) they must be in writing; and (2) they must be part of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Those that do "shall be valid, irrevocable, and enforceable." *Id.* This one does; the Terms and Conditions of Service is indisputably in writing,[11] it affirmatively states that it is to be governed by the FAA,[12] and in any event it is an archetypal example of a contract affecting interstate commerce.[13] Accordingly, there can be no doubt that the parties' agreement is governed by the FAA.

Nor can there be any question that these claims fall within the scope of the arbitration provision of the Agreement. Plaintiff's arbitration provision applies to "[a]ny claim, dispute or controversy" that arises from or relates in any way to the Terms and Conditions of Service or the Plaintiff's wireless service. *See* Chatterton Decl. Exs. A, C. The Supreme Court has indicated that, "insofar as the allegations underlying the statutory claims touch matters covered by" the contract, those allegations fall within the scope of a broadly-defined arbitration agreement such as the one in this case. *See Mitsubishi Motors*, 473 U.S. at 625 n.13.

Here, Plaintiff's claims relate to her wireless service and therefore fall squarely within the scope of her arbitration agreement. In light of the strong presumption in favor of arbitrability,

---

[11]     *See* Chatterton Decl. and Exs. A, B, C, F.

[12]     *See id.* Ex. F ("This arbitration agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16."); *see also id.* at Exs. A, B, C.

[13]     *See United States v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007) ("Telephones and cellular telephones are instrumentalities of interstate commerce. . . . It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce.") (quoting *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)).

7

there can be no dispute that they are arbitrable.[14]  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (courts must presume that disputes are arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *Moses H. Cone*, 460 U.S. at 24-25 (courts should determine scope of agreements "with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *see also Int'l Underwriters AG & Liberty Re-Ins. Corp. v. Triple I: Int'l Invest.*, 533 F.3d 1342, 1344-45 (11th Cir. 2008) ("The canons of construction run in favor of arbitration.").

**B.    Plaintiff's Arbitration Agreement Is Fully Enforceable**

Where an arbitration provision is governed by the FAA and the plaintiff's claims fall within the agreement's scope, a court's duty is clear:  it must compel arbitration and stay the proceeding pending that arbitration.  *See* 9 U.S.C. §§ 3, 4; *see also Moses H. Cone*, 460 U.S. at 22 ("[The FAA] provides two parallel devices for enforcing an arbitration agreement:  a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."); *Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original).  The result should be no different here; the parties' agreement is within the scope of the FAA and their dispute is within the scope of that agreement.  Accordingly, the Court should direct Plaintiff to submit her claims to individual arbitration pursuant to the terms of that agreement.

---

[14]    And, to the extent the scope of the agreement is called in question, that question would be for the arbitrator to decide, at least in the first instance.  *See* Chatterton Decl. at Ex. F (defining "Claim" as including the applicability of the arbitration provision); *see also id.* at Exs. A, B, C. As the Supreme Court has found, parties may agree that arbitrators should decide the question of arbitrability.  *See, e.g., First Options v. Kaplan*, 514 U.S. 938, 942-43 (1995).

MetroPCS anticipates that Plaintiff will argue that her claims cannot be vindicated on an individual basis and, as a result, the requirement that disputes be arbitrated on an individual basis is "unconscionable" because it "immunizes" a defendant.  Plaintiff is mistaken.

Under Florida law, a contractual provision is unenforceable on unconscionability grounds *only* if it is both substantively *and* procedurally unconscionable.  *See, e.g.*, *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. Dist. Ct. App. 2005); *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 39 (Fla. Dist. Ct. App. 2005); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. Dist. Ct. App. 2005).  The party challenging a particular provision in a contract, not the party defending it, bears the burden of persuasion.  *See, e.g.*, *Murphy*, 944 So. 2d at 1134.  It is a heavy burden:

> The concept of unconscionability does not mean, however, that a court will relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him. . . . 'It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.'

*Gainesville Health Care Ctr., Inc. v. Weston,* 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003) (quoting *Steinhardt v. Rudolph*, 422 So. 2d 884, 890 (Fla. Dist. Ct. App. 1982)).  Here, Plaintiff cannot establish either form of unconscionability, let alone both.

### 1.     The Agreement Is Not Procedurally Unconscionable

Procedural unconscionability concerns the manner in which a contract is entered.  *See, e.g.*, *VoiceStream*, 912 So. 2d at 39.  A contract is considered procedurally unconscionable in Florida if there was an absence of meaningful choice on the part of one of the parties.  *See, e.g.*,

*Gainesville,* 857 So. 2d at 284.  What matters is whether that party had a choice as to whether to enter into the agreement, ***not*** whether she had an opportunity to negotiate its terms and conditions.  *See, e.g., Carnival Cruise Lines v. Shute,* 499 U.S. 585, 593 (1991); *see also Bischoff v. DirecTV, Inc.,* 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002) ("Practical business realities make it unreaslistic to expect" the defendant "to negotiate all of the terms of their customer contracts, including arbitration provisions, with each customer before initiating service.").[15]

Here, there is no hint of procedural unconscionability alleged in the Plaintiff's Complaint. Nor could there be, as Plaintiff faced no economic compulsion when she agreed to the MetroPCS Terms and Conditions of Service.  Florida courts have rejected procedural unconscionability arguments where the consumer was free to obtain similar services elsewhere.  *See, e.g., VoiceStream,* 912 So. 2d at 40 (discussing *Orkin Exterminating Co. v. Petsch,* 872 So. 2d 259 (Fla. Dist. Ct. App. 2004); *Fonte,* 903 So. 2d at 1025; *Gainesville,* 857 So. 2d at 285)).  That is clearly the case here.  Wireless service is not the sort of necessity that might cause consumers to submit to unconscionable terms in order to obtain it.  *See, e.g., Skipper v. Potter,* No. 07-525, 2008 U.S. Dist. LEXIS 5744, at *4 (N.D. Fla. Jan. 25, 2008) (denying motion to proceed in forma pauperis and stating that wireless phone service is a "luxury," not a "necessity").  And assuming it were, there are still many other service providers with which Plaintiff could have contracted.[16]

---

[15]     Given standardized contracts' ubiquity in and importance to the modern economy, procedural unconscionability ***must*** mean something more than that an agreement is a form contract.  Otherwise half of the unconscionability test would be eliminated for 99% of all contracts in use today.  John J. A. Burke, *Contract as Commodity: A Nonfiction Approach,* 24 SETON HALL LEGIS. J. 285, 290 (2000) (estimating that standard form contracts account for 99% of all contracts now made).

[16]     There is "robust competition" in the marketplace:  95 percent of the U.S. population has three or more different operators offering wireless telephone service in their census block, while 60 percent has five or more.  FCC, Thirteenth Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services (Jan. 15, 2009) at 5-6, *available*

It bears repeating that the arbitration agreement was in no way hidden from the Plaintiff. Plaintiff received a copy of the Terms and Conditions of Service when she signed up for service, the Terms and Conditions of Service state in bold, capital type that the parties are agreeing to resolve disputes through arbitration and are waiving their right to pursue claims in a court of law, and Plaintiff was free to cancel that service at any time without incurring a penalty, and within thirty days of initiation without incurring any costs whatsoever.  She did not cancel the service. Instead, she accepted and agreed to the Terms and Conditions of Service by initiating and using the MetroPCS service.  *See supra.*  Those facts alone doom any procedural unconscionability argument that could be made here.  *See, e.g.*, *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1324-25 (S.D. Fla. 2004) (Altonaga, J.) (rejecting procedural unconscionability argument because plaintiff's arbitration agreement was clearly disclosed and because plaintiff had contractual right to cancel the agreement within thirty days); *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. Dist. Ct. App. 2006) (rejecting procedural unconscionability argument where plaintiff did not reconsider her decision during three-day revocation period).

## 2.   <u>The Agreement Is Not Substantively Unconscionable</u>

Assuming for the sake of argument that Plaintiff were able to establish some degree of procedural unconscionability, her contract is still enforceable because she cannot establish that any particular provision in her agreement is substantively unconscionable.  Under Florida law, a contract is substantively unconscionable if it is "so 'outrageously unfair' as to 'shock the judicial conscience.'"  *Gainesville*, 857 So. 2d 284-85 (quoting *Belcher v. Kier*, 558 So. 2d 1039, 1043 (Fla. Dist. Ct. App. 1990) (refusing to equate "unconscionability" with "unreasonableness"));

---

*at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-09-54A1.pdf.    Indeed, "consumers continue to reap significant benefits—including low prices, new technologies, improved service quality, and choice among providers—from competition in the [wireless] marketplace." *Id.* at 5. As of December 2007, there were 10 mobile carriers servicing Florida. *Id.* at 132.

*Free Unitholders of Outdoor Resorts at Orlando, Inc. v. Outdoor Resorts of Am., Inc.*, 460 So. 2d 382, 383 (Fla. Dist. Ct. App. 1984); *Steinhardt*, 422 So. 2d at 889); *Garrett v. Janiewski*, 480 So. 2d 1324, 1326 (Fla. Dist. Ct. App. 1985) ("Synonyms for the term unconscionable include 'shocking to the conscience' and 'monstrously harsh.'").

Class action waivers are not "outrageously unfair" because a class action is not a right preserved by the Constitution, but rather a procedural device for joining many parties' claims. *See, e.g.*, 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.02 (3d ed. 2006).  As such, it may be freely waived.  *See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 174 (5th Cir. 2004) ("As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,' characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims.") (citations omitted); *Johnson v. West Suburban Bank*, 225 F.3d 366, 369 (3d Cir. 2000) (concluding that the right to participate in a class action is "merely a procedural one . . . that may be waived."); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995) ("When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial. . . .  One of those . . . is the possibility of pursuing a class action.").

Not surprisingly, then, the courts in an overwhelming majority of jurisdictions have rejected substantive unconscionability arguments and have upheld agreements to arbitrate on an individualized basis.[17]  Florida and the Eleventh Circuit stand squarely in the majority.  *See, e.g.*,

---

[17]      *See, e.g., Pleasants v. Am. Express Corp.*, 541 F.3d 853, 855–56, 858–59 (8th Cir. 2008) (Missouri law; *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) (Louisiana law); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501-03 (4th Cir. 2002) (West Virginia law); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002)

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir. 2001); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (Altonaga, J.) (finding that proposed class action settlement was fair and reasonable, in part, because defendant's "arbitration defense" based on a class action waiver "is a solid one"). *Accord Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019, 1024-25 (Fla. Dist. Ct. App. 2005) (finding class action waiver enforceable under Florida law because class action waivers do not undermine FDUTPA's remedial purposes, because "neither the text nor our review of the legislative history of FDUTPA suggests that the legislature intended to confer a non-waivable right to class representation," and because "there are numerous enforcement mechanisms which can protect consumers other than class actions").

---

(Maryland law); *Lloyd v. MBNA Am. Bank, N.A.*, 27 Fed. Appx. 82, 84 (3d Cir. 2002) (Delaware law); *Szymkowicz v. DirecTV, Inc.*, 2007 WL 1424652 (D.D.C. May 9, 2007) (District of Columbia law); *Davidson v. Cingular Wireless LLC*, 2007 WL 896349, at *5-*8 (E.D. Ark. Mar. 23, 2007) (Arkansas law); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1322 (S.D. Fla. 2006) (Florida law); *Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (New York law); *Steed v. Sanderson Farms, Inc.*, 2006 WL 2844546, at *10 (S.D. Miss. Sept. 29, 2006) (Mississippi law); *Miller v. Equifirst Corp.*, 2006 WL 2571634, at *16 (S.D. W.Va. Sept. 5, 2006) (West Virginia law); *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1204-06 (C.D. Cal. 2006) (Texas law); *Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005) (Oklahoma law); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 259 & n.11 (S.D.N.Y. 2005) (Arizona, Delaware, Nevada, New Hampshire, and South Dakota law); *Jones v. Genus Credit Mgmt. Corp.*, 353 F. Supp. 2d 598, 603 (D. Md. 2005) (Maryland law); *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1365 (N.D. Ga. 2002) (Georgia law); *Pick v. Discover Fin. Servs., Inc.*, 2001 U.S. Dist. LEXIS 15777, at *15 (D. Del. Sept. 28, 2001) (Delaware law); *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1253 (Colo. Ct. App. 2001) (Colorado law); *Brown v. KFC Nat'l Mgmt. Co.*, 921 P.2d 146, 166-67 & n.23 (Haw. 1996) (Hawaii law); *Hayes v. County Bank*, 811 N.Y.S.2d 741, 743 (App. Div. 2006) (New York law); *Wilson v. Mike Steven Motors, Inc.*, 111 P.3d 1076 (table), 2005 WL 1277948, at *7 (Kan. Ct. App. May 27, 2005) (Kansas law); *Walther v. Sovereign Bank*, 872 A.2d 735, 742-43 (Md. 2005) (Maryland law); *Tillman v. Commercial Credit Loans, Inc.*, 629 S.E.2d 865, 872-74 (N.C. Ct. App. 2006) (North Carolina law); *Strand v. U.S. Bank Nat'l Ass'n ND*, 693 N.W.2d 918, 926-27 (N.D. 2005) (North Dakota law); *Spann v. Am. Express Travel Servs.*, 2006 WL 2516431, at *11-*12 (Tenn. Ct. App. Aug. 30, 2006) (Utah law); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex. Ct. App. 2003) (Texas law).

Although two recent Eleventh Circuit and Florida state court decisions did invalidate class action waivers, they did so because, in those cases, the plaintiffs' ability to recover an award of attorneys' fees was either limited or non-existent.  *See Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007); *see also S.D.S. Autos, Inc. v. Chrzanowski*, 976 So. 2d 600, 606 (Fla. Dist. Ct. App. 2007) (following *Dale*).  Courts since *Dale* have consistently limited it to its facts, and have continued to enforce class action waivers where, as here, a prevailing plaintiff would be entitled to an attorneys' fee award.  *See, e.g., Sanders v. Comcast Cable Holdings, LLC*, No. 07-918, 2008 U.S. Dist. LEXIS 2632, at *32-33 (M.D. Fla. Jan. 14, 2008) ("In *Dale*, the court struck down Comcast's class action waiver and found significant the fact that the plaintiff would not be entitled to attorneys fees under the prevailing statute. . . .  Taking into consideration the particular facts and circumstances of this case, including the fact that attorneys fees are available to prevailing Plaintiffs under FDUTPA, . . . this Court determines that the class action waiver is not unconscionable."); *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1287 (N.D. Ga. 2008) ("The Eleventh Circuit [in *Dale*] distinguished its earlier cases of *Caley*, *Jenkins*, and *Randolph*, noting that in those cases the prevailing plaintiffs had an automatic or likely recovery of attorney's fees under a fee-shifting provision in the statute under which they sued, thereby giving an attorney an incentive to arbitrate such small-value claims on an individual basis. The end result was that in *Caley*, *Jenkins*, and *Randolph*, there was no danger that the defendant's alleged illegal conduct would go unchecked."); *Cruz v. Cingular Wireless, LLC*, No. 07-714, 2008 U.S. Dist. LEXIS 69938, at *11 (M.D. Fla. Sept. 15, 2008) (recognizing that *Dale*'s holding was the result of the fact that the plaintiffs could not recover attorneys' fees for the claims asserted in the complaint); *id.* at *9 (recognizing that *S.D.S. Autos* limited its holding to cases arising under Florida Statute § 501.976, which limits the availability of

attorneys' fees, and explaining that the "difference in the amount available for attorneys' fees is what drove the *S.D.S. Autos* court to strike down the class action arbitration ban. In this case, there is no limitation on attorneys' fees."); *Brueggemann v. NCOA Select, Inc.*, No. 08-80606, 2009 U.S. Dist. LEXIS 55296, at *10 (S.D. Fla. June 30, 2009) (finding class waiver in arbitration agreement not unconscionable where plaintiff brought FDUTPA claim that permitted attorneys' fees to prevailing plaintiffs). *Cf. Torre v. BFS Retail & Commercial Operations, LLC*, No. 08-22046, 2008 U.S. Dist. LEXIS 99002, at *15-16 (S.D. Fla. Dec. 8, 2008) (rejecting a substantive unconscionability attack on a class waiver where fees were available to prevailing plaintiff without even discussing *Dale*, relying instead on *Caley*'s reasoning that class waivers are consistent with the goals of arbitration, namely simplicity, informality, and expediency).

The notion that the availability of a fee award to a prevailing plaintiff precludes a finding of unconscionability is not a new one. Courts in this Circuit have consistently found just that:

> [I]n an individual suit seeking damages under statutory provisions that provide prevailing plaintiffs with multiple damages, costs and attorneys' fees, . . . the existence of these remedies provides parties and lawyers with incentives to pursue their cases. . . . Indeed, the central purpose behind statutory attorneys fees is to encourage lawyers to accept cases in which damages may be small or nominal. Although [the plaintiff] and his lawyers may be unwilling to litigate this case due to the fact that it may not provide them with enough financial incentive to justify their efforts, this court cannot conclude that either the Plaintiff or his attorneys are so lacking in economic incentive to warrant a finding that [defendant's] class action prohibition is unconscionable.

*Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1343-44 (M.D. Ala. 2003) (citations and footnotes omitted); *Jenkins*, 400 F.3d at 878 ("when the opportunity to recover attorneys' fees is available, lawyers will be willing to represent [debtors with small claims] in arbitration"); *see also Iberia Credit Bureau, Inc.*, 379 F.3d at 175 & n.19 (holding that a class-action waiver "does not leave the plaintiffs without remedies or so oppress them as to rise to the level of

unconscionability" because, among other things, the arbitrator could award damages under the state unfair trade practices act); *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (rejecting argument that small Truth in Lending Act claim was not economically viable unless brought on a class-wide basis as "unfounded in light of . . . the fact that attorney's fees are recoverable"); *Johnson v. West Suburban Bank*, 225 F.3d 366, 374 (3d Cir. 2000) ("Nor will arbitration necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors.  Attorneys' fees are recoverable. . . ."); *Strand v. U.S. Bank Nat'l Ass'n, N.D.*, 693 N.W.2d 918, 926 (N.D. 2005) (upholding a class-arbitration waiver based in part on the availability of attorney's fees award).

Here, Plaintiff's claims under both FDUTPA and the Telecommunications Act, 47 U.S.C. § 201, entitle a prevailing plaintiff to an award of attorneys' fees.  *See* Fla. Stat. § 501.2105 (providing for attorneys' fees and costs to prevailing parties proving violation of FDUTPA); 47 U.S.C. § 206 (providing that "common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained . . . together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.").  In fact, Plaintiff's Complaint specifically seeks such an award.  *See* Pl.'s Compl. ¶ 51, 99.  Therefore, under controlling Eleventh Circuit and Florida law, her arbitration agreement is fully enforceable.

MetroPCS would be remiss if it did not also address a chief criticism of class waivers, namely the claim that they are somehow harmful to consumers.  That is simply not the case.  As the United States Supreme Court has recognized, "Congress, when enacting [the FAA], had the needs of consumers . . . in mind," as "arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to

litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995). Indeed, consumers generally fare ***better*** in arbitrations than in lawsuits. *See, e.g.*, Mark Fellows, *The Same Result As In Court, More Efficiently: Comparing Arbitration and Court Litigation Outcomes*, METRO. CORPORATE COUNSEL 32 (July 6, 2006). That is especially true if arbitration is compared with ***class action*** litigation, the benefits of which are, to say the least, uncertain. As Congress has concluded, "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed." Class Action Fairness Act of 2005, PUB. L. NO. 109-2, 119 Stat. 4, § 2(a)(3). And whereas "class actions tend to be run by, and for the benefit of, plaintiffs' attorneys" with little active involvement on the part of consumers (Christopher R. Drahozal, *"Unfair" Arbitration Clauses*, 2001 U. ILL. L. REV. 695, 754 (2001)), an individual consumer can actively and directly participate in her arbitration.

**3.** **Adopting Plaintiff's Unconscionability Argument Would Violate the FAA**

Assuming for argument's sake that Florida were to reverse course and adopt a rule that prohibited class action waivers, that rule would be preempted by the FAA.

First, Section 2 of the FAA provides that state law will only invalidate an arbitration agreement on "such grounds as exist at law or in equity for the revocation of ***any*** contract." 9 U.S.C. § 2 (emphasis added). Conversely, Section 2 preempts state law doctrines, including unconscionability, if they are used "in ways that subject arbitration clauses to special scrutiny." *Iberia Credit Bureau*, 379 F.3d at 167; *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Put differently, state laws are preempted whenever they "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Id.*; *see also* Christopher Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 Vand. L. Rev. 729, 776 (2006) (footnote omitted). Here, because neither FDUTPA nor any other relevant

Florida statute contains a prohibition on class waivers that applies to contracts generally, adopting one exclusively in arbitration cases would fun afoul of and be preempted by Section 2.

Second, any rule prohibiting class waivers, i.e., requiring class-wide arbitration, would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" in enacting the FAA. *See United States v. Locke*, 529 U.S. 89, 109 (2000) (citation and internal quotation marks omitted). Congress declared arbitration agreements "valid, irrevocable, and enforceable" because "arbitration saves time, saves trouble, saves money." *Joint Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the Judiciary*, 68th Cong., 1st Sess., at 7 (1924) (statement of Charles Bernheimer, N.Y. Chamber of Commerce). As it subsequently explained, arbitration usually is "cheaper and faster than litigation," has "simpler procedural and evidentiary rules," "minimizes hostility," and is "more flexible in regard to scheduling." H.R. Rep. No. 97-542, at *13 (1982). The Supreme Court, too, has recognized the superior "simplicity, informality, and expedition of arbitration." *Mitsubishi Motors*, 473 U.S. at 628.

Class action procedures, by contrast, are antithetical to the low-cost and efficient resolution of disputes that is the hallmark of arbitration. While the average length of an AAA arbitration from filing to award is less than six months, class actions take years. *Allied-Bruce*, 513 U.S. at 280-81. Conditioning the enforceability of arbitration agreements on the availability of class proceedings will not result in companies modifying their agreements to permit class arbitration. Rather, it inevitably will cause companies to abandon arbitration altogether. Thus, the consequence of such a rule would not be "fairer" or "more efficient" arbitration – but rather more litigation and less arbitration. Nothing could more clearly frustrate the purpose of the FAA. *Cf. Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1135 (9th Cir. 2005)

(Securities and Exchange Act of 1934 impliedly preempts the imposition of state ethics standards on NASD arbitrators because those standards would "mak[e] arbitration more costly for investors and employees," might "deter well-qualified individuals from serving as NASD arbitrators," and would increase the "complexity, cost, and uncertainty" of arbitration).

As the Fifth Circuit put it in rejecting an unconscionability attack, "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,' characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims."  *Iberia Credit*, 379 F.3d at 174 (quoting *Gilmer*, 500 U.S. at 31); *see also id.* at 176 (to demand "all of the procedural accoutrements that accompany a judicial proceeding" would miss "the point of arbitration"). More recently, the Eleventh Circuit agreed that a prohibition of class-wide arbitration is "consistent with the goals of 'simplicity, informality, and expedition' touted by the Supreme Court in *Gilmer*," which is another way of saying that a rule ***requiring*** class-wide arbitration would be ***inconsistent*** with the purposes of the FAA.  *Caley*, 428 F.3d at 1378 (quoting *Gilmer*).

Accordingly, under the doctrine of conflict preemption, "the Supremacy Clause of the Federal Constitution . . . preclude[s] [a court] from invalidating an arbitration agreement otherwise enforceable under the FAA simply because a plaintiff cannot maintain a class action." *Pyburn v. Bill Heard Chevrolet*, 63 S.W. 3d 351, 365 (Tenn. Ct. App. 2001) (citation omitted); *accord Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005); *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 257 n.2 (Fla. 2d DCA 2006) ("To the extent the [Arbitration] Agreement implicates interstate commerce, we note that such a result could trigger federal preemption concerns under the Federal Arbitration Act.") (citations omitted).

**C.**      **Plaintiff's Claims Should Be Stayed Pending Arbitration**

Under Section 3 of the FAA, in any lawsuit "referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See* 9 U.S.C. § 3.   Because the parties agreed to arbitrate any disputes relating to MetroPCS' wireless service, and because all of plaintiffs' are subject to arbitration, the Court should direct the parties to binding arbitration and stay this action pending arbitration. *See, e.g., Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.,* 858 F.2d 648, 649 (11th Cir. 1988) (on defendant's motion to stay pending arbitration, district court correctly stayed action and should have stayed all discovery in that action as well).

## III.   CONCLUSION

For the foregoing reasons, MetroPCS respectfully requests that the Court grant its Motion to Compel Arbitration and Stay Litigation.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Emily C. Komlossy, Esq., Faruqi & Faruqi LLP, 3595 Sheridan Street, Suite 206, Hollywood, FL 33020 and Scott A. Bursor, Esq., 369 Lexington Ave., 10th Floor, New York, NY 10017-6531 in the manner specified either via transmission of Notices of Electronic Filing, generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

**/s/ Barry L. Davis**
Barry L. Davis
Fla. Bar No. 294977
Isabel V. Alvarez
Fla. Bar No. 856861
Jennifer A. Cosgrove
Fla. Bar No. 0158712
THORNTON, DAVIS & FEIN, P.A.
80 SW 8th Street, 29th Floor
Miami, FL 33130
(305) 446-2646 (tel.)
(305) 441-2374 (fax)
davis@tdflaw.com
cosgrove@tdflaw.com

*Counsel for Defendant*
*MetroPCS Wireless, Inc.*

Michael J. Stortz
DRINKER BIDDLE & REATH LLP
50 Fremont Street
San Francisco, CA 94105
(415) 591-7500 (tel.)
(415) 591-7510 (fax)
michael.stortz@dbr.com

*Of Counsel for Defendant*
*MetroPCS Wireless, Inc.*

**Dated:  November 18, 2009**