UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MARCIA WILLIAMS, on behalf of herself and others similarly situated, <br><br>                      Plaintiffs, <br> -against- <br><br> METROPCS WIRELESS, INC., <br><br>                      Defendant. | C.A. No. 1:09-cv-22890 (CMA) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................... ii

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 2

     A.   MetroPCS Tells Consumers There is "No Contract" ................................... 2

     B.   Ms. Williams Never Agreed to Arbitration .................................................. 6

III. ARGUMENT ......................................................................................................... 7

     A.   There is No Written Agreement to Arbitrate this Dispute ........................... 7

          1.   There Was No Agreement ...................................................................... 7

          2.   MetroPCS is Estopped from Enforcing the Arbitration Clause ......................... 11

     B.   MetroPCS' Arbitration Agreement is Procedurally and  Substantively
          Unconscionable and Therefore Unenforceable ........................................... 12

          1.   The Arbitration Clause is Procedurally Unconscionable ................................. 13

          2.   The Arbitration Clause is Substantively Unconscionable ............................... 15

IV.  CONCLUSION ..................................................................................................... 17

CERTIFICATE OF SERVICE ..................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                               Page(s)

*AT&T Technologies, Inc. v. Communications Workers of America*,
    475 U.S. 643 (1986).............................................................................................. 7

*Bellsouth Mobility, LLC v. Christopher*,
    819 So. 2d 171 (Fla. Dist. Ct. App. 4th Dist. 2002) ................................................... 2, 15, 16

*Blinco v. Green Tree Servicing LLC*,
    400 F.3d 1308 (11th Cir. 2005) ..................................................................................... 2, 11

*Caley v. Gulfstream Aero. Corp.*,
    428 F.3d 1359 (11th Cir. Ga. 2005)................................................................................... 8

*Chastain v. Robinson-Humphrey Co.*,
    957 F.2d 851 (11th Cir. 1992) .......................................................................................... 10

*Cruz v. Cingular Wireless, LLC*,
    No. 07-714, 2008 U.S. Dist. LEXIS 69938 (M.D. Fla. Sept. 15, 2008)............................... 16

*Dale v. Comcast Corp.*,
    498 F. 3d 1216 (11th Cir. 2007) ...................................................................................... 8, 16

*Fonte v. AT&T Wireless Servs.*,
    903 So. 2d 1019 (Fla. Dist. Ct. App. 4th Dist. 2005) ........................................... 10, 12, 13, 14

*General Impact Glass & Windows Corp. v. Rollac Shutter of Tex., Inc.*,
    8 So. 3d 1165 (Fla. Dist. Ct. App. 3d Dist. 2009)...................................................... 9

*Golden v. Mobil Oil Corp.*,
    882 F. 2d 490 (11th Cir. 1989) ....................................................................................... 12, 13

*Hartsfield v. Williams*,
    145 Fla. 709 (Fla. 1941).................................................................................................... 11

*Hill v. GE Power Systems, Inc.*,
    282 F.3d 343 (5th Cir. 2002) ........................................................................................... 11

*Klay v. Pacificare Health Sys., Inc.*,
    389 F.3d 1191 (11th Cir. 2004) ..................................................................................... 7, 8

*Kohl v. Bay Colony Club Condominium*,
    398 So. 2d 865 (Fla. Dist. Ct. App. 4th Dist. 1981) ............................................... 13

*La Torre v. BFS Retail & Commer. Operations, LLC*,
    2008 U.S. Dist. LEXIS 99002 (S.D. Fla. Dec. 8, 2008) ....................................................... 2

ii

Page(s)

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)....................................................................................... 7

*Operis Group, Corp. v. E.I. at Doral, LLC*,
   973 So. 2d 485 (Fla. Dist. Ct. App. 3d Dist. 2007)...................................... 11

*Pacificare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2002)...................................................................................... 11

*Paladino v. Avnet Computer Technologies, Inc.*,
   134 F.3d 1054 (11th Cir.1998) ...................................................................... 8

*Powertel, Inc. v. Bexley*,
   743 So. 2d 570 (Fla. Dist. Ct. App. 1st Dist. 1999)........................... 12, 13, 14, 15

*Price Plaintiffs v. Humana Ins. Co. (In re Humana Inc. Managed Care Litig.)*,
   285 F.3d 971 (11th Cir. Fla. 2002) .............................................................. 11

*Rivera v. AT&T Corp.*,
   420 F. Supp. 2d 1312 (S.D. Fla. 2006) ..................................................... 8, 10

*Rolls-Royce PLC v. Royal Caribbean Cruises, Ltd.*,
   960 So. 2d 768 (Fla. Dist. Ct. App. 3d Dist. 2007 ........................................ 7

*Romano v. Manor Care, Inc.*,
   861 So. 2d 59 (Fla. Dist. Ct. App. 4th Dist. 2003) ...................................... 12

*Scott v. EFN Invs., LLC*,
   312 Fed. Appx. 254 (11th Cir. Fla. 2009).................................................... 8

*Stewart Agency, Inc. v. Robinson*,
   855 So. 2d 726 (Fla. Dist. Ct. App. 4th Dist. 2003) .................................. 12

*Stiener v. Apple Computer, Inc.*,
   556 F. Supp. 2d 1016 (N.D. Cal. 2008) ...................................................... 15

*Tepper Realty Co. v. Mosaic Tile Co.*,
   259 F. Supp. 688 (S.D.N.Y. 1966)............................................................... 12

*Toll Jupiter Ltd. P'ship v. Motto*,
   16 So. 3d 250 (Fla. Dist. Ct. App. 4th Dist. 2009) .................................. 9, 11

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)........................................................................................ 7

*VoiceStream Wireless Corp. v. U.S. Communs., Inc.*,
   912 So. 2d 34 (Fla. Dist. Ct. App. 4th Dist. 2005) .................................... 12

iii

Page(s)

*Volt Info. Scis. v. Bd. of Trs.*,
   489 U.S. 468 (1989)................................................................................................... 7

**StatuStatutes, Rules & Regulations**

9 U.S.C.
   §§ 1-16 .................................................................................................................. 7
   § 1......................................................................................................................... 2
   § 2......................................................................................................................... 7

Plaintiff Marcia Williams ("Plaintiff" or "Ms. Williams") submits this memorandum of law in opposition to Defendant MetroPCS Wireless, Inc.'s ("MetroPCS" or "Defendant") motion to compel arbitration and stay litigation (the "Motion to Compel").

## I. INTRODUCTION

MetroPCS lures consumers with promises of "the best unlimited menu in wireless" "*without a contract*." Komlossy Dec. Exh. A (emphasis added).[1]  The company further pledges to give "customers unlimited freedom to communicate the way they want to – *not by the rules of traditional wireless carriers.  At MetroPCS, we unleash you from contracts, ridiculously priced plans, outrageous overages, nickel-and-dime routines that –until now – have made wireless so frustrating.*" *Id.*[2]  Ms. Williams purchased a phone from MetroPCS and paid for a MetroPCS Unlimited $45 per month plan "without a contract" to obtain "Unlimited Nationwide Coverage." ¶¶10, 32; Williams Dec. ¶¶2, 4-11.[3]  Not only did Ms. Williams discover that her plan was not "Unlimited" – incurring over $180 in fees and roaming charges in a single month (¶10) – but now on this motion, MetroPCS is seeking to enforce an arbitration clause in the non-existent contract.  Quite simply, MetroPCS cannot deny the existence of a contract while simultaneously "claiming the

---

[1] "¶__" refers to the corresponding paragraph of Plaintiff's Complaint filed herein on September 25, 2009.  "Komlossy Dec." refers to the Declaration of Emily C. Komlossy in Opposition to Motion to Compel Arbitration and Stay Litigation, filed concurrently herewith.  Exh. A is a screen shot of the "About MetroPCS" page of the MetroPCS website. http://www.metropcs.com/about/about.aspx (Last visited December 4, 2009).

[2] *See also* Declaration of Jamie Chatterton in Support of MetroPCS Wireless, Inc.'s Motion to Compel Arbitration and Stay Litigation ("Chatterton Dec.") ¶6 ("MetroPCS' business model differs from the traditional wireless communication service model, which generally requires customers to commit to a term contract, typically for one or two years.")

[3] "Williams Dec." refers to the Declaration of Marcia Williams in Opposition to Motion to Compel Arbitration and Stay Litigation, filed concurrently herewith.

benefits of a contract," such as enforcement of an arbitration clause.  *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005).

Even if the Court were in some fashion to determine that there was some form of "agreement" to arbitrate – despite the absence of a contract – the MetroPCS arbitration clause is both procedurally and substantively unconscionable, and therefore unenforceable under both Florida law and the Federal Arbitration Act ("FAA", 9 USCS § 1, et seq.).  *La Torre v. BFS Retail & Commer. Operations, LLC*, 2008 U.S. Dist. LEXIS 99002, *7 (S.D. Fla. Dec. 8, 2008); *Bellsouth Mobility, LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. Dist. Ct. App. 4th Dist. 2002).  MetroPCS should not be allowed to promise consumers that it will "***unleash [them] from contracts***," while simultaneously enforcing one of the harshest and most one-sided arbitration clauses in the wireless industry.

## II.  STATEMENT OF FACTS

**A.   MetroPCS Tells Consumers There is "No Contract"**

MetroPCS markets and distributes its phones and wireless service through three different channels: a company website, corporate stores and authorized distributors.  *See e.g.*, Komlossy Dec. Exh. B.[4]  The promotional materials in each of these channels emphasize two features: MetroPCS' purportedly "Unlimited Plans" and "No Contracts."  These are not isolated representations, but are, in fact, featured prominently in all of MetroPCS' advertising and marketing materials.  For example, the MetroPCS website not only offers to "***unleash you from contracts***," but virtually every page of the website has a banner on the left side proclaiming "***Unlimited local and long distance calling. No signed contracts.***"  Komlossy Dec. Exh. C (emphasis added).[5]  Even the MetroPCS webpage

---

[4]  November 2, 2009 MetroPCS Press Release announcing expanded coverage area in Florida. http://investor.metropcs.com/phoenix.zhtml?c=177745&p=irol-newsArticle&ID=1349491&highlight  (Last visisted December 4, 2009).  *See also* Chatterton Dec., ¶10.

[5]  http://www.metropcs.com/ (Last visited December 4, 2009).

2

comparing the various plans offered by the company proclaims "**No Signed Contracts**" in large bold type, while the only reference to the MetroPCS "Terms and Conditions," which contains the arbitration clause, is at the bottom of the page, in faint type and less than half the size. Komlossy Dec. Exh. D (emphasis in original).[6] To reinforce this message, the signage at MetroPCS stores proclaims: "*No Contracts*. No Gimmicks. Unlimit Yourself." Komlossy Dec. Exh. E.[7] Moreover, the Metro PCS promises of "*Unlimited*" service and "*no contracts*" are also being directed at minority communities. *See* Komlossy Dec. Exh. F ("te liberamos de contratos" or we liberate or free you from contracts).[8]

The "no contract" message is also a prominent feature in many of the company's television commercials. For example, one MetroPCS television commercial features a contract being passed through an animated paper shredder and promises consumers "*no contracts*" on four separate occasions. Komlossy Dec. Exh. G;[9] Exh. O;[10] Williams Dec. ¶¶6-7. According to the commercial:

> *You never sign a contract. You're done with contracts*, done with minutes, done with overages. MetroPCS has its own three-G network. So, cut the cord, ditch your home phone and save even more money. You'll be saving hundreds, maybe, thousands of dollars a year. Right now, you can add four more unlimited lines for a hundred dollars. That's what the other guys charge for one. And we have great phones. For a limited time, you can get the Kyocera Melo for just twenty-nine dollars. *No contracts* and your first month's service is free. MetroPCS, unlimited

---

[6] http://www.metropcs.com/plans/ (Last visited December 4, 2009).

[7] Copy of photograph of MetroPCS store front showing signs indicating "No Contracts. No Gimmicks. Unlimit Yourself." http://www.facebook.com/photo.php?pid=4543187&id=197126625338&fbid=197139055338 (Last visited December 4, 2009).

[8] http://hola.metropcs.com/enes/about/about.aspx (Last visited December 4, 2009).

[9] Transcript of television commercial and screen shot of paper shredder. http://video.google.com/videosearch?q=metropcs+commercial&hl=en&emb=0&aq=f#q=metropcs+commercial&hl=en&emb=0&aq=f&start=10 (Last visited November 27, 2009).

[10] Windows Media Player file, ShredderCommerical.wmv, a MetroPCS commercial filed on CD-ROM via conventional means with Notice of Conventional Filing.

talk, unlimited text, starting at thirty dollars a month.  ***Never any contracts*** and no activation fees. . . .

In another MetroPCS television spot featuring a mermaid and a unicorn, the voice over proclaims: "Introducing a wireless plan so fantastic it sounds like make believe.  Unlimited talk and text for just $40 a month and ***no contract***. MetroPCS – unlimit yourself"(emphasis added), while the text on the commercial reads "Never sign a contract."  Exh. P;[11] Williams Dec. ¶5.[12]

MetroPCS' authorized distributors likewise heavily promote the fact that MetroPCS wireless service does not require a contract.  For example, Best Buy Stores, an authorized MetroPCS distributor, currently features four different MetroPCS phones for sale on its website.   The only three features of these phones found in large bold print are the brand of the phone, the color, and the fact that it is a MetroPCS "**No-Contract Mobile Phone**" (emphasis in original).  Komlossy Dec. Exh. H.[13]  For example, with regards to one phone the website offers in large bold type "**MetroPCS - Kyocera Neo No-Contract Mobile Phone - Silver/Blue**."  *Id.*  To find any other features of the phone, consumers must read the fine print or follow separate links – with no mention whatsoever of MetroPCS' Terms and Conditions of Service.  Similarly, GDI Wireless, Inc., another authorized

---

[11] Windows Media Player file, UnicornCommerical.mpg.wmv, a MetroPCS commercial filed on CD-ROM via conventional means with Notice of Conventional Filing.

[12] http://video.google.com/videosearch?q=metropcs+commercial&hl=en&emb=0&aq=f#q=metropcs+commercial&hl=en&emb=0&aq=f&start=10&view=2&qvid=Metro&vid=-5263784191696204751.  (Last visited November 27, 2009).

[13] http://www.bestbuy.com/site/olspage.jsp?id=pcat17080&type=page&qp=crootcategoryid%23%23-1%23%23-1~~q70726f63657373696e6774696d6d653a3e313930302d30312d3031~~cabcat0800000%23%230%23%23o5~~cabcat0801000%23%230%23%23h~~cabcat0801002%23%230%23%23h~~nf398%7C%7C4d6574726f504353&list=y&nrp=15&sc=phoneOfficeSP&sp=%2Bbrand+skuid&usc=abcat0800000 (Last visited November 27, 2009).

MetroPCS distributor, promotes MetroPCS wireless service in a television commercial with graphics stating in bold print: "**No Contract.  No Catches.  ONE FLAT RATE**."  (emphasis in original) [14]

MetroPCS distinguishes itself from its competitors, *i.e.,* "traditional wireless carriers," on the basis that it does not require its subscribers to enter a contract, giving them a competitive advantage. For example, every MetroPCS press release states MetroPCS is "a provider of unlimited wireless communications service for a flat-rate ***with no signed contract***."  Komlossy Dec. Exh. B.[15] MetroPCS chief executive officer Roger Lindquist has also repeatedly emphasized this message to investors.  At a recent analyst conference call, Mr. Lindquist stated, "Over the last few years we helped redefine the wireless industry by pioneering ***a no contract, unlimited flexible wireless service experience***." Komlossy Dec. Exh. I (emphasis added).[16]  Mr. Lindquist went on to state that MetroPCS was a " pioneer[] and leader[] in the ***unlimited no contract wireless segment***," claiming "there's not a real difference in service quite honestly, ***there's a difference in contract and no contract and we absolutely believe that you really don't need a contract there to be a wireless subscriber***."  *Id.* (emphasis added).  Lindquist concluded "that ***the no contract service model will be the key growth in the wireless service industry***."  *Id.* (emphasis added).  By using this low cost, "no contract" model, MetroPCS targets lower income, immigrant customers, with no credit histories or

---

[14] http://video.google.com/videosearch?q=metropcs+commercial&hl=en&emb=0&aq=f#q=metropcs+commercial&hl=en&emb=0&aq=f&start=10&view=2&qvid=metropcs+commercial&vid=-6701631561079204701  (Last visited November 27, 2009).

[15] November 2, 2009 MetroPCS Press Release.

[16] MetroPCS Communications Inc. Q3 2009 Earnings Call Transcript, dated November 5, 2009. https://www.bloomberglaw.com/launch.htm;JSESSIONID=79aabd7d-74d5-4a79-a4d1-1a8e2d058855#uuid=17239AC7-F042-6EF5-18D9-47075DDFF391;action=history (Last visited November 30, 2009).

poor credit histories, who are unable to obtain conventional wireless service from the major wireless carriers.  ¶6; Komlossy Dec. Exhs. J and K.[17]

**B.      <u>Ms. Williams Never Agreed to Arbitration</u>**

Ms. Williams purchased a Kyocera phone at a MetroPCS company owned store.  Williams Dec ¶2.  At the same time, Ms. Williams subscribed to a MetroPCS "Unlimited Nationwide" plan for $45 per month.  *Id.*  To activate her wireless service, a MetroPCS salesman at the company-owned store took Ms. Williams' personal information and entered it into a computer.  *Id.* at ¶12.  Ms. Williams never signed the "Start of Service" form or any other documents at MetroPCS.  *Id.*  Ms. Williams was not provided a copy of the "Terms of Service" from the MetroPCS employee at the time she subscribed to MetroPCS wireless service.  *Id.* at ¶¶ 12, 15.  Ms. Williams understood that it was unnecessary to enter into a contract with MetroPCS to subscribe to its wireless service.  *Id.* at ¶¶8-12.  Ms. Williams was also informed that she would only receive a text message informing her of the amount owed, her account number and when her payment would be due.  *Id.* at ¶13.  Ms. Williams was informed there was an extra monthly charge if she wanted either an electronic or paper bill in addition to the text message.  *Id.*  Ms. Williams did not elect to receive either an electronic or a paper bill.  *Id.*  The text messages received by Ms. Williams never mentioned either the "Terms of Service" or an agreement to arbitrate.  *Id.* at ¶14.  Ms. Williams never received a copy of the MetroPCS "Terms of Service" and never agreed to arbitrate any disputes.  *Id.* at ¶15.

---

[17]  Scheidt, Zachary, "Metro PCS Communications: The Bull Case," June 29, 2007, http://seekingalpha.com/article/39753-metro-pcs-communications-the-bull-case  (Last visited December 3, 2009); Rusli, Evelyn M., "MetroPCS Can't Keep It Up" Forbes, October 5, 2007, http://www.forbes.com/2007/10/05/metropcs-leap-closer-markets-equity-cx_er_ra_1005markets37.html (Last visited December 3, 2009).

## III. <u>ARGUMENT</u>

### A.    <u>There is No Written Agreement to Arbitrate this Dispute</u>

MetroPCS' arbitration clause states that "This arbitration agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA")."  *See, e.g.*, Chatterton Dec. Exh. A, p. 6 of 6. The FAA provides, in relevant part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 USCS § 2 (emphasis added).

### 1.    <u>There Was No Agreement</u>

The FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).   "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  *Id.* at 626; *see also Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989)("Arbitration under the [FAA] is a matter of consent, not coercion").   Since arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986), *quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1200 (11th Cir. 2004)(applying Florida law to determine the existence of an agreement to arbitrate).[18]

---

[18] This is consistent with Florida state law.  *See Rolls-Royce PLC v. Royal Caribbean Cruises, Ltd.*, 960 So. 2d 768, 771 (Fla. Dist. Ct. App. 3d Dist. 2007).

Thus, while there is a strong federal policy in favor of arbitration, this Court may "not compel parties to arbitrate a dispute where the parties have not agreed to do so." *Scott v. EFN Invs., LLC*, 312 Fed. Appx. 254, 256 (11th Cir. Fla. 2009), *citing Klay*, 389 F.3d at 1200.  The issue of whether the parties agreed to arbitrate is to be determined by the Court.  *Dale v. Comcast Corp.*, 498 F. 3d 1216, 1219 (11th Cir. 2007).  As explained by the Eleventh Circuit in *Scott*, to determine the propriety of a motion to compel arbitration, this Court must "engage in a two-step inquiry: (1) first, [] determine whether the parties agreed to arbitrate the dispute; and (2) second, [] decide whether 'legal constraints external to the parties' agreement foreclosed arbitration.'"  *Scott*, 312 Fed. Appx. at 256, *quoting Klay*, 389 F.3d at 1200.  Florida law governs both the existence and enforceability of the arbitration provision in the present case.  *See Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir.1998) (noting that arbitration clauses are interpreted according to ordinary state-law rules of contract construction).[19]

It has been recognized under both Florida and federal law that no signature is required to meet the "written" requirement of either the FAA or Florida statute, but rather, acceptance of the contract/agreement may be manifest by performance.  *See, e.g.*, *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1370 (11th Cir. Ga. 2005)("employees' acceptance was by continuing their employment"); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1321 (S.D. Fla. 2006).[20]  *Nevertheless, arbitration may not be compelled in the complete **absence** of a "meeting of the minds on the arbitration clause." Toll Jupiter Ltd. P'ship v. Motto*, 16 So. 3d 250, 252 (Fla. Dist. Ct. App. 4th

---

[19] This is consistent with Florida law which "requires the trial court to determine whether a valid written agreement to arbitrate exists before submitting the case to arbitration. . .." *Operis Group, Corp. v. E.I. at Doral, LLC*, 973 So. 2d 485, 489 (Fla. Dist. Ct. App. 3d Dist. 2007).

[20] Unlike the present case, in *Rivera v. AT&T Corp.*, 420 F. Supp. 2d at 1315, AT&T provided evidence that it mailed the customer service agreement containing the arbitration clause to the plaintiff on three separate occasions, and its monthly bills, also mailed to plaintiff, referred to the customer service agreement.  *Id.* at 1315.  MetroPCS has provided no such evidence in this case.

Dist. 2009)(emphasis added).  In the absence of such a meeting of the minds, "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *General Impact Glass & Windows Corp. v. Rollac Shutter of Tex., Inc.*, 8 So. 3d 1165, 1167 (Fla. Dist. Ct. App. 3d Dist. 2009)(refusing to enforce "terms and conditions" appearing on website and in catalog because they were not part of the contract).

MetroPCS simply presumes there is a valid agreement to arbitrate this dispute.  ("By purchasing and using that service, [Ms. Williams] accepted and agreed to the MetroPCS Terms of and Conditions of Service."  MetroPCS Brf.  at 2.)  To support this proposition, MetroPCS relies exclusively on a declaration of the Texas -based corporate Director of Marketing[21] that MetroPCS has a "business practice" of providing subscribers with a "Start of Service Form" which includes MetroPCS' "Terms and Conditions of Service" and a "Welcome Guide" which states that "by using MetroPCS wireless service, the customer is agreeing to the Terms and Conditions of Service." Chatterton Dec. ¶¶21, 32.  As detailed above, and notably in Ms. Chatterton's Declaration, MetroPCS distinguishes itself from the "traditional wireless communications market" by "*unleashing [consumers] from contracts*."  Komlossy Dec. Exh A (emphasis added); Chatterton Dec.¶6.[22] Conspicuously absent from Ms. Chatterton's Declaration is any indication that in the face

---

[21] Ms. Chatterton's declaration lacks foundation in that it fails to provide any basis to conclude that she has personal knowledge that "MetroPCS has followed this business practice [*i.e.*, delivery of Start of Service form] at all relevant times in Florida, regardless of retail channel."  Chatterton Dec. ¶14.  For example, Ms. Chatterton fails to describe any visits to any Florida retail outlets, whether MetroPCS, Best Buy or other stores, and fails to describe training or materials provided to employees of either the company or authorized distributors.  Instead, Ms. Chatterton merely states the company policy and asks this Court to believe that all employees of both company-owned stores and authorized distributors complied with this policy at all times, regardless of whether or not they ever received any training.

[22] Ms. Chatterton has conveniently modified MetroPCS' marketing language and in her declaration styled this distinction as no requirement to sign a "term contract."  Chatterton Dec. ¶6.

*(footnote continued…)*

of MetroPCS' vast "no contract" marketing campaign, anything within either the Start of Service form or the Welcome Guide informs consumers that they are entering into a binding contract.

Where, as here, a party is seeking to avoid arbitration and preserve her right to a trial by jury and the right to pursue class wide relief, "an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial." *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992); *see also Rivera v. AT&T Corp.*, 420 F. Supp. 2d at 1318. In the present case, Ms. Williams has unequivocally denied that she ever received the Start of Service form or the Terms and Conditions of Service. Moreover, Ms. Williams has produced copious examples of MetroPCS' marketing materials in which they promised consumers that there was "no contract" and attested to her understanding that she was not entering into a contract based upon these representations. Williams Dec. ¶7. In contrast, MetroPCS has been unable to provide so much as one document signed by or mailed to Ms. Williams to substantiate its unsupported contention that Ms. Williams agreed to arbitrate this dispute. Instead, MetroPCS has submitted the declaration of a Texas-based corporate executive regarding a corporate policy, without any competent evidence showing that the policy was followed with respect to Ms. Williams or any other consumer. Under Florida law, where such arbitration agreements in cellular service contracts have been enforced, there has been undisputed evidence that the customer understood they were entering into a term contract, and that the arbitration clause was delivered to the customer on multiple occasions. *See*, *e.g.*, *Fonte v. AT&T Wireless Servs.*, 903 So. 2d 1019, 1025 (Fla. Dist. Ct. App. 4th Dist. 2005).

---

*(...footnote continued)*
No such distinction is made to consumers such as Ms. Williams when MetroPCS is seeking to obtain their business. *See e.g.*, Komlossy Dec. Exhs. A through I.

10

As a fundamental precept of Florida contract law, where there is "no meeting of minds" there simply is "no contract." *Hartsfield v. Williams*, 145 Fla. 709, 714 (Fla. 1941); *see also Operis Group, Corp.,* 973 So. 2d 485 ( reversing trial court order compelling arbitration where court failed to determine whether there was a "meeting of the parties' minds" with respect to the existence of a contract); *Toll Jupiter Ltd. P'ship*, 16 So. 3d 250 (denying motion to compel arbitration due to failure to reach "a meeting of the minds on the arbitration clause").  Quite plainly, there can be no "meeting of the minds" with regards to an agreement to arbitrate disputes where one of the parties makes such an effort to inform the other that there is "no contract."

    2.    **MetroPCS is Estopped from Enforcing the Arbitration Clause**

Not surprisingly, there are no reported opinions where a party actively advertised the fact that their service was available with "no contract," yet nevertheless sought to enforce an arbitration clause in this non-existent contract.  In several reported opinions, however, a party has sought to obtain benefits under the terms of a contract while attempting to escape the effects of an arbitration clause in that same contract.  In these instances, courts have applied the doctrine of equitable estoppel to preclude a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes. *See Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. Fla. 2005); *Price Plaintiffs v. Humana Ins. Co. (In re Humana Inc. Managed Care Litig.)*, 285 F.3d 971, 976 (11th Cir. Fla. 2002) *rev'd on other grounds by Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2002).

"[T]he lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness." *Price Plaintiffs*, 285 F.3d at 976, *quoting Hill v. GE Power Systems, Inc.*, 282 F.3d 343, 349 (5th Cir. 2002).  Thus, as explained by the Eleventh Circuit, "[t]he purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from 'relying on the contract when it works to

11

[his] advantage [by establishing the claim], and repudiating it when it works to [his] disadvantage [by requiring arbitration].'" *Id.*, *quoting Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966). Conversely, MetroPCS should not be allowed to have its cake and eat it too by distinguishing itself from traditional wireless communications carriers to lure customers by offering "no contract" service, yet now seek to rely upon an arbitration clause to prevent customers from seeking redress in court.[23]

## B.    MetroPCS' Arbitration Agreement is Procedurally and Substantively Unconscionable and Therefore Unenforceable

Under Florida law, in order for a contract provision to be deemed unconscionable, it must be shown that the provision is both procedurally and substantively unconscionable. *Golden v. Mobil Oil Corp.*, 882 F. 2d 490, 493 (11th Cir. 1989); *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 727 (Fla. Dist. Ct. App. 4th Dist. 2003); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1st Dist. 1999). Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair. *Romano v. Manor Care, Inc.*, 861 So. 2d 59, 62 (Fla. Dist. Ct. App. 4th Dist. 2003). Florida courts take a "balancing approach," requiring a certain quantum of procedural plus a certain quantum of substantive unconscionability, though the amount may vary. *Id.* "In other words, the more substantively oppressive the contract term, the less evidence of procedural

---

[23] Despite MetroPCS' efforts to distinguish itself "from the traditional wireless communications service model, which generally requires customers to commit to a term contract, typically for one or two years," (Chatterton Dec. ¶6), MetroPCS relies extensively upon court decisions applying arbitration provisions in signed contracts with such traditional contract-based wireless carriers. *See, e.g.*, *VoiceStream Wireless Corp. v. U.S. Communs., Inc.*, 912 So. 2d 34, 36 (Fla. Dist. Ct. App. 4th Dist. 2005)("This case involves the enforceability of an arbitration clause included in a contract executed by VoiceStream Wireless Corporation and each of the Appellees."); *Fonte v. AT&T Wireless Servs.*, 903 So. 2d at 1021 ("Fonte eventually signed a two-year Personal Service Agreement.").

unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*; *see also Fonte v. AT&T Wireless Servs.*, 903 So. 2d 1019, 1025 (Fla. Dist. Ct. App. 4th Dist. 2005)

### 1.      The Arbitration Clause is Procedurally Unconscionable

Procedural unconscionability exists when the individualized circumstances surrounding the transaction reveal that there was no "real and voluntary meeting of the minds" of the contracting parties. *Golden*, 882 F.2d at 493, *quoting Kohl v. Bay Colony Club Condominium*, 398 So. 2d 865, 868 (Fla. Dist. Ct. App. 4th Dist. 1981).  In the context of wireless service, Florida courts have focused their procedural unconscionability analysis on "the relative bargaining power of the parties, the manner in which the contract was entered, and the ability of [consumers] to know and understand the challenged contractual terms." *Fonte v. AT&T Wireless Servs.*, 903 So. 2d at 1026; *Powertel, Inc.*, 743 So. 2d at 574.

In *Fonte*, the plaintiff was an informed consumer who carefully examined the different wireless service providers before she chose "***to sign AT&T's contract***." *Id.* (emphasis added)  Then, after signing the contract, the plaintiff "received ample notice to review the Terms and Conditions of her Service Agreement with AT&T.  Specifically, in the package containing her phone, Fonte received a notice to review the included Terms and Conditions on four of the six sides of the package.  Likewise, AT&T's monthly invoices also referenced these Terms and Conditions." *Id.*  In contrast to *Fonte*, where the AT&T arbitration clause was not found procedurally unconscionable, Ms. Williams never signed a contract, never received the MetroPCS Terms and Conditions of Service, never received a monthly invoice referring to the Terms and Conditions of Service, and in fact never had a "Service Agreement," because there was simply no contract.  Most importantly, since all of the marketing and promotional materials promised that there was "no contract," neither Ms. Williams nor any other MetroPCS subscriber had any reason to seek out, let alone to carefully

13

review the MetroPCS Terms and Conditions of Service, since they did not know they were forming a contract with MetroPCS. Consequently, both "the manner in which the contract was entered, and the ability of [consumers] to know and understand the challenged contractual terms" render the MetroPCS arbitration clause procedurally unconscionable. *Fonte v. AT&T Wireless Servs.*, 903 So. 2d at 1026.

In *Powertel*, the Court found the arbitration clause in a form contract of adhesion unconscionable because "customers did not bargain for the arbitration clause, nor did they have the power to reject it." 743 So. 2d at 575. Just as in the present case, Powertel argued "that customers can avoid the effect of the arbitration clause by canceling their phone service and signing an agreement with another provider." *Id.* The Court, however, rejected this argument because it found "that switching providers would result in a loss of the investment the customers have in the agreements they made with Powertel." *Id.* In the present case, MetroPCS has targeted lower income, immigrant customers with no or poor credit history who are unable to obtain conventional wireless service and simply sign "an agreement with another provider." Chatterton Dec. ¶6; Komlossy Dec. Exhs. J and K.[24] Thus while MetroPCS subscribers are purportedly given the option of cancelling their contract and returning the phone for a refund (Chatterton Dec. ¶7 stating corporate policy to that effect), they do not have the ability to obtain service from other providers. Consequently, just as in *Powertel*, "it is no answer to say that the customers can simply switch providers. Many customers may have continued their service with Powertel despite their objection

---

[24] Scheidt, *supra*; Rusli, *supra*.

to the arbitration clause simply because they had no economically feasible alternative." 743 So. 2d at 575.[25]

### 2.     The Arbitration Clause is Substantively Unconscionable

Substantive unconscionability, on the other hand, focuses on the arbitration agreement itself and looks to whether the terms of the contract are unreasonable and unfair. *Bellsouth Mobility, LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. Dist. Ct. App. 4th Dist. 2002); *Powertel, Inc.*, 743 So. 2d at 574. In conducting this analysis, courts look to the entire substance of the arbitration agreement, rather than analyzing each provision in isolation. *See Bellsouth*, 819 So. 2d at 173 (analyzing arbitration clause as a whole to determine that "the clause gives Bellsouth an unfair advantage.").

*Bellsouth*, another case involving a wireless carrier where the arbitration clause was held to be substantively unconscionable, is instructive on this issue. Bellsouth's arbitration clause "require[d] customers to give up many specific legal remedies. For instance, it expressly limits Bellsouth's liability to actual damages, . . . [and] expressly removes Bellsouth's exposure to a class action suit. . ." *Id.* In contrast, "Bellsouth still has the option of pursuing court action in some instances, including the collection of a debt." *Id.*

In the present case, the MetroPCS arbitration clause similarly provides MetroPCS "an unfair advantage." First, just as in *Bellsouth*, the MetroPCS arbitration clause restricts consumers to

---

[25] Whether or not a cell phone is a "necessity" is not determinative on the issue of whether there is a disparity of bargaining power sufficient to support a finding of procedural unconscionability. Instead, the analysis must focus upon whether as a result of the ***uniqueness*** or necessity of the product or service offered by the defendant leaves the consumer "without market alternatives." *Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1026 (N.D. Cal. 2008). In the present case, MetroPCS went to great lengths to promote the fact that unlike alternative "traditional carriers," with MetroPCS, consumers were able to obtain a phone without a credit check and with "no contract." *See* Chatterton Dec. ¶¶5-6; Williams Dec. ¶¶4-6.

arbitration, while reserving for itself "the right to institute legal or equitable proceedings in any court of competent jurisdiction. . ."  Chatterton Dec., Exhs. A-C, and E-F.  Second, MetroPCS claims the arbitration clause is "consumer friendly" because it offers consumers a choice of the National Arbitration Forum ("NAF"), American Arbitration Association ("AAA") or JAMS as arbitrators. MetroPCS Brf. at 4 and n.4.  However, MetroPCS fails to mention that NAF recently entered into a consent decree with the Minnesota Attorney General agreeing that it would no longer conduct consumer arbitrations to settle charges of fraud, false advertising, and deceptive trade practices in consumer arbitrations.  Komlossy Dec. Exhs. L and M.[26]  Since the entry of this consent decree, questions have also been raised about AAA's consumer arbitration practices as well.  *See* Komlossy Dec. Exh. M.[27]  Third, just as in *Bellsouth*, the arbitration clause contains a class action waiver which may have the impact of depriving consumers of a meaningful remedy.  While such a class action waiver alone may not necessarily make an arbitration clause substantively unconscionable (*compare Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007)(finding class action waiver unenforceable); with *Cruz v. Cingular Wireless, LLC*, No. 07-714, 2008 U.S. Dist. LEXIS 69938, at *11 (M.D. Fla. Sept. 15, 2008) (finding class action waiver in traditional contract-based wireless carrier's arbitration clause not unconscionable), when coupled with other factors such as MetroPCS' unilateral reservation of the right to pursue litigation other than arbitration, and the designation of arbitration firms such as the now-disgraced NAF, these factors provide MetroPCS with "an unfair advantage" and are therefore substantively unconscionable.  *Bellsouth*, 819 So. 2d at 173.

[26] Minnesota Attorney General Complaint. http://www.ag.state.mn.us/PDF/PressReleases/SignedFiledComplaintArbitrationCompany.pdf (Last visited November 27, 2009); Consent Decree http://pubcit.typepad.com/files/nafconsentdecree.pdf (Last visited November 27, 2009).

[27] Gupta, Deepak"AAA Joins NAF in Quitting Arbitration of Consumer Debt Disputes." http://pubcit.typepad.com/clpblog/2009/07/aaa-joins-naf-in-quitting-arbitration-of-consumer-debt-disputes.html (Last visited November 27, 2009).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant

MetroPCS' Motion to Compel Arbitration and Stay Litigation.

DATED:  December 7, 2009                     FARUQI & FARUQI, LLP

                                             By:  s/ Emily C. Komlossy
                                                 Emily C. Komlossy  (FL Bar No. 007714)
                                             ekomlossy@faruqilaw.com
                                             3595 Sheridan Street
                                             Suite 206
                                             Hollywood, FL 33021
                                             (954) 239-0280 (tel)
                                             (954) 239-0281 (fax)

                                             FARUQI & FARUQI, LLP
                                             Nadeem Faruqi
                                             Anthony Vozzolo
                                             Christopher Marlborough (FL Bar. No. 894621)
                                             369 Lexington Avenue, 10th Floor
                                             New York, NY 10017-6531
                                             (212) 983-9330 (tel)
                                             (212) 983-9331 (fax)
                                             nfaruqi@faruqilaw.com
                                             avozzolo@faruqilaw.com
                                             cmarlborough@faruqilaw.com

                                             LAW OFFICES OF SCOTT A. BURSOR
                                             Scott A. Bursor (FL Bar. No. 68362)
                                             369 Lexington Avenue, 10th Floor
                                             New York, NY 10017-6531
                                             (212) 989-9113 (tel)
                                             (212) 989-9163 (fax)
                                             scott@bursor.com

                                             *Attorneys for the Plaintiff*

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that this December 7, 2009, counsel of record identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF filing or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, are being served with the following documents:

- Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Arbitration**;**

- Declaration of Emily C. Komlossy in Opposition to Defendant's Motion to Compel Arbitration and Stay Litigation, and Exhibits A - N; and

- Declaration of Marcia Williams in Opposition to Defendant's Motion to Compel Arbitration and Stay Litigation.


Barry L. Davis
Isabel V. Alvarez
Jennifer A. Cosgrove
THORNTON, DAVIS & FEIN, P.A.
Brickell BayView Centre
80 SW 8th Street, Suite 2900
Miami, FL 33130
(305) 446-2646 (Tel.)
(305) 441-2374 (Fax)
davis@tdflaw.com
ialvarez@tdflaw.com
cosgrove@tdflaw.com
*Attorneys for Defendant MetroPCS Wireless, Inc.*

18

Michael J. Stortz
DRINKER, BIDDLE & REATH, LLP
50 Fremont Street
San Francisco, CA 94105
(415) 591-7500 (Tel.)
(415) 591-7510 (Fax)
michael.stortz@dbr.com
*Attorneys for Defendants MetroPCS Wireless, Inc.*

DATED:  December 7, 2009                    FARUQI & FARUQI, LLP

By:  s/ Emily C. Komlossy
        Emily C. Komlossy  (FL Bar No. 007714)
ekomlossy@faruqilaw.com
3595 Sheridan Street
Suite 206
Hollywood, FL 33021
(954) 239-0280 (tel)
(954) 239-0281 (fax)

19